**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
DIVERSIFIED HOME              :
INSTALLATIONS, INC.,          :
                              :   CIVIL ACTION NO. 09-6393 (MLC)
     Plaintiff,               :
                              :   MEMORANDUM OPINION
     v.                       :
                              :
MAXWELL SYSTEMS, INC.,        :
et. al.,                      :
                              :
     Defendants.              :
_____ :
```

**COOPER, District Judge**

The plaintiff, Diversified Home Installations, Inc.
("Diversified"), originally brought this action in New Jersey
Superior Court, against the defendants, Maxwell Systems, Inc. and
Maxwell Systems of New York ("Maxwell")[1], asserting claims for
(1) breach of contract, (2) negligence, (3) violations of the New
Jersey Consumer Fraud Act, and (4) breach of warranty.  (Dkt.
entry no. 1, Notice of Removal, Ex. A, Compl. at 12-14.)  Maxwell
removed the action in December 2009 pursuant to 28 U.S.C. §
("Section") 1332.  (Notice of Removal.)  Maxwell now moves to
dismiss the Complaint pursuant to Federal Rule of Civil Procedure
("Rule") 12(b)(6) or, in the alternative, to transfer the action
to the Eastern District of Pennsylvania pursuant to Section

_____

[1] Diversified alleges that Maxwell Systems of New York is a
subsidiary or franchise of Maxwell Systems, Inc.  (Compl. at 1.)
Maxwell states that Maxwell Systems of New York is not a legal
entity.  (Dkt. entry no. 3, Def. Br. at 1.)

1404(a) based on an agreed-upon forum selection clause. (Dkt. entry no. 3, Mot.) Maxwell also moves to dismiss Counts II and III of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim under Pennsylvania law, which Maxwell argues governs this dispute. (Id.) The Court determines the motion on the briefs without an oral hearing, pursuant to Rule 78(b). For the reasons stated herein, the Court will grant the part of the motion seeking to transfer to the Eastern District of Pennsylvania, deny the part of the motion seeking, in the alternative, to dismiss the Complaint under 12(b)(6) as to venue as moot, and deny the part of the motion seeking to dismiss Counts II and III without prejudice.

### BACKGROUND

Diversified alleges that a Maxwell representative, Ted Berg ("Berg"), solicited Diversified to purchase a new Maxwell Job Cost Accounting, Service Management, and Order Processing Software System ("Maxwell System"). (Compl. at 2.) Diversified contends that its president Marc Buzin ("Buzin") signed an End-User Registration Form at this time. (Dkt. entry no. 5, Pl. Br. at 4.) Diversified states that the parties created an initial contract in October 2005 that they revised in November 2005. (Compl. at 2.)

Diversified states that the parties met multiple times to negotiate the implementation of the Maxwell System. (Id.) It

states that the contract the parties created describes the promised capabilities and aspects of the Maxwell System.  (Id.) Diversified alleges that Maxwell represented that it had the appropriate software to provide the services Diversified required.  (Id.)  Diversified alleges that Maxwell provided an analysis of Diversified's needs and stated that the Maxwell System would fully satisfy these needs.  (Id. at 3.)  Diversified contends that Maxwell provided further assurance that it had the expertise, knowledge, and experience to implement the Maxwell System and train Diversified's employees to work with it.  (Id.) Diversified states that, based on Maxwell's representations, it entered into a contract with Maxwell for the purchase of the software, its implementation, and training.  (Id.)  Diversified alleges that Maxwell's representatives stated that portions of the Maxwell System would be functional as early as January 2006. (Id.)  Diversified contends that the contract provided that the Maxwell System would, inter alia, "provide the ability to produce and track customer work proposals," "query customers and customer sites by contract name," and "generate job orders, work orders and material requests when a customer proposal is accepted." (Id.)

Diversified alleges that in the spring of 2006, Maxwell informed it that the software package it provided would not be capable of providing the aforementioned services.  (Id. at 4.)

3

Diversified contends that Maxwell then proposed using a different software, American Contractors Software, that could integrate easily into the Maxwell System.  (<u>Id.</u>)  This new software was never fully integrated with the Maxwell System.  (<u>Id.</u>) Diversified alleges that it has not been able to use the Maxwell System or the American Contractors Software for the purposes for which it contracted.  (<u>Id.</u>)  Diversified contends that Maxwell's representations and assurances regarding the Maxwell System and American Contractors Software were false and the products were defective and unsatisfactory.  (<u>Id.</u> at 5.)  Diversified alleges that it has incurred thousands of dollars in expenses and time and effort in trying to utilize the ineffective Maxwell System. (<u>Id.</u>)

## DISCUSSION

### I.    12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when

4

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- that the 'pleader is entitled to relief.'" <u>Iqbal</u>, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

When there exists "a valid forum selection clause designating a particular forum for settling disputes . . . a Rule 12(b)(6) dismissal is a permissible means of enforcing that forum selection clause." <u>Jordan Acquisitions Group, LLC v. Adam Techs., Inc.</u>, No. 09-542, 2009 WL 2473987, at *4 (W.D. Pa. Aug. 12, 2009); <u>see</u> <u>Salovaara v. Jackson Nat'l Life Ins. Co.</u>, 246 F.3d 289, 299 (3d Cir. 2001).  In <u>Salovaara</u>, the Court stated that while Rule 12(b)(6) was "a permissible means of enforcing a forum selection clause," the Court should transfer rather than dismiss if the forum selection clause points to another federal venue. <u>Id.</u>

## II. Validity of a Forum Selection Clause

The Court, in deciding whether to enforce a forum selection clause, must first determine "that the clause is valid and the present action falls within [its scope]."  <u>Kahn v. Am. Heritage</u>

<u>Life Ins. Co.</u>, No. 06-1832, 2006 WL 1879192, at *4 (E.D. Pa. June 29, 2006).  Forum selection clauses are presumptively valid and enforceable.  <u>Lester v. Gene Express, Inc.</u>, No. 09-403, 2009 WL 3757155, at *2 (D.N.J. Nov. 10, 2009).

To overcome a presumptively valid forum selection clause, the party objecting to it must make a "strong showing" that the clause is unreasonable by demonstrating: "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would . . . result in jurisdiction so seriously inconvenient as to be unreasonable."  <u>Moneygram Payment Sys. v. Consorcio Oriental, S.A.</u>, 65 Fed.Appx. 844, 846 (3d Cir. 2003) (citation omitted).  To rise to the level of unreasonableness, the objecting party must show more than "mere inconvenience or additional expense."  <u>Banc Auto, Inc. v. Dealer Servs. Corp.</u>, No. 08-3017, 2008 WL 4055830, at *3 (E.D. Pa. Aug. 28, 2008).

## III.  Motion to Transfer Under Section 1404

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a).  To transfer an action, it must be shown that the alternative venue is not only adequate, but also more convenient than the current one.  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995).  District courts have

broad discretion to determine whether considerations of fairness favor transfer.  Id. at 883.

Courts balance private and public interests when deciding whether to transfer venue under Section 1404(a).  Id. at 879. Private interests include a plaintiff's choice of forum, a defendant's preference, whether the claim arose elsewhere, convenience of the parties as indicated by their physical and financial condition, convenience of the witnesses to the extent that they may be unavailable in one forum, and the location of books and records to the extent they could not be produced in alternative fora.  Id.; Yocham v. Novartis Pharms. Corp., 565 F.Supp.2d 554, 557 (D.N.J. 2008).

Courts also consider public interests in the Section 1404(a) analysis, including enforceability of a judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora resulting from court congestion, local interest in deciding a local controversy, public policies of the fora, and familiarity of the district court with applicable state law.  Jumara, 55 F.3d at 879-80; Yocham, 565 F.Supp.2d at 557.

When determining whether to transfer pursuant to Section 1404, a forum selection clause is generally entitled to "substantial consideration."  Jumara, 55 F.3d at 880.  The presence of a forum selection clause "is a significant factor

that figures centrally into the district court's calculus."
Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).
Deference to a plaintiff's choice of forum is inappropriate where
the plaintiff has already freely agreed to an appropriate venue.
Jumara, 55 F.3d at 880.  Where there is a valid forum selection
clause, the plaintiff must show why the contractual choice of
forum is not binding.  Id.  The forum selection clause shifts the
burden on a motion to transfer to the plaintiff.  Lester, 2009 WL
3757155, at *5.

IV. **Motion to Dismiss or Transfer Based on the Forum Selection
Clause**

Maxwell argues that the parties are bound by a valid,
mandatory forum selection clause to litigate in a state or
federal court within the Eastern District of Pennsylvania.  (Def.
Br. at 2.)  Maxwell states that the parties entered into an End-
User License Agreement that was finalized in November 2005.  (Id.
at 3.)  It contends that paragraph 15 of the End-User License
Agreement states "[t]he state and federal courts located in the
Eastern District of Pennsylvania shall have exclusive
jurisdiction over any dispute, claim, or controversy arising
under or related to this agreement."  (Id.)  Maxwell asserts that
this clause is valid and enforceable and covers all allegations
in the Complaint.  (Id. at 5.)

Maxwell contends that the forum selection clause was
reasonable and that the transaction was negotiated at arms'

8

length over a series of meetings and several draft agreements between two sophisticated parties.  (Id. at 6.)  It further contends that the forum selection clause is mandatory because it uses the language "shall be brought."  (Id. at 8.)

Diversified contends that the clause at issue in this End-User License Agreement is not valid because it was not signed by or agreed to by Diversified and does not cover all of the allegations in the Complaint.  (Pl. Br. at 1.)  It contends that Buzin executed only the contract and the End-User Registration Form on behalf of Diversified.  (Id. at 2-3.)  Diversified contends that the End-User Registration Form is a one page document.  (Id. at 3.)  It states that the End-User License Agreement relied upon by Maxwell was not presented to Buzin for his initials, signature, or review.  (Id. at 3.)  Buzin contends that he has not seen the End-User License Agreement.  (Id.)  Buzin stated in his certification that he searched his company files and the End-User Registration Form and End-User License Agreement were not provided to him.  (Dkt. entry no. 5, Buzin Cert.)  He acknowledges that his signature appears on the End-User Registration Form, but states that that document does not contain a forum selection clause. (Pl. Br. at 3-4.)  He states "to my knowledge, neither my office management . . . nor I was ever provided with the End-User License Agreement to read or review.  The only document I can say with certainty that I saw

9

was the End User Registration Form because it has my signature on it." (Buzin Cert. at 2.) He states that the absence of his initials on the pages of the End-User License Agreement indicates that he did not agree to it. (Id.)

Diversified further argues that the parties did not enter into an actual contract until November 2005. (Pl. Br. at 4.) It states that the contract contains a statement that it will be governed by the laws of the Commonwealth of Pennsylvania, but contains no forum selection clause. (Id.) As such, Diversified contends that Pennsylvania law will, in fact, cover any disputes regarding the contract itself. (Id.) It contends that Buzin did, in fact, sign this contract. (Buzin Cert. at 4.)[2]

Diversified asserts that there was no agreement between the parties as to the essential terms of the End-User License Agreement. (Pl. Br. at 6.) It states that the End-User License Agreement was not presented to Buzin, and nothing in the End-User Registration Form or the contract dictates a forum selection clause. (Id.) As such, Diversified contends that there is no written agreement between the parties with respect to forum selection. (Id.)

Maxwell responds arguing that the "contract" that Diversified references was actually a November 2005 Proposal and

---

[2] Buzin states in his certification that he signed the contract. (Buzin Cert. at 4.) Diversified has failed, however, to present this signed copy of the contract to the Court.

10

Agreement ("Proposal").  (Dkt. entry no. 6, Reply Br. at 2.)  It
states that this Proposal does not supersede the End-User License
Agreement and its forum selection clause.  (Id.)  It notes that
the Proposal referenced by Diversified states that "[a]ll
understandings between the parties regarding the purchase of the
Products are fully set forth herein, and in the attached Maxwell
Software Licensing and Maintenance Agreements."  (Id. at 2-3.)
It contends that the End-User License Agreement was referenced by
the Proposal, and it contains a mandatory forum selection clause.
(Id. at 3.)

Maxwell further contends Buzin signed the End-User
Registration Form which provides that it is four pages and the
signer intends to be legally bound by the terms and conditions of
the End-User License Agreement attached hereto.  (Id. at 4.)  It
contends that Buzin's signature confirms that he was presented
with the End-User License Agreement and agreed to be bound by it.
(Id. at 5.)  Maxwell argues that Buzin's statement, made more
than four years later, that he was not presented with the End-
User License Agreement, cannot serve as a proper basis to excuse
him from his obligations.  (Id.)

**A. Validity of the Forum Selection Clause**

The Court finds that the forum selection clause in question
is valid and enforceable.  To invalidate a forum selection
clause, a party must make a strong showing of the clause's

11

unreasonableness by establishing fraud or overreaching, violation
of strong public policy, or that enforcement would result in
serious inconvenience.  <u>Moneygram</u>, 65 Fed.Appx. at 846.
Diversified has failed to make a strong showing that the forum
selection clause was unreasonable.

Diversified does not allege that the clause was the product
of fraud or overreaching, that enforcement would violate strong
public policy, or that enforcement would result in seriously
inconvenience.  The crux of Diversified's argument is that Buzin
did not sign or agree to the essential terms of the End-User
License Agreement.  (Pl. Br. at 2, 6.)   Buzin states that "to
[his] knowledge . . . [h]e was [not] provided with the End-User
License Agreement to read or review."  (Buzin Cert. at 2.)   He
also states that he did, in fact, sign the End-User Registration
Form.  (<u>Id.</u>)

The Court notes that the End-User Registration Form, that
Buzin admits to signing, clearly states at the top
"[i]ntentending to be legally bound by the terms and conditions
of the End-User License Agreement <u>attached</u> <u>hereto</u>."  (Dkt. entry
no. 3, Ex. A, End-User Registration Form (emphasis added).)   It
also indicates at the bottom that it is "page 1 of 4."  The End-
User License Agreement directly follows the End-User Registration
Form that Buzin signed.  The End-User Registration Form also
clearly states "[t]he undersigned party identified as Licensee

12

represents and warrants that it has read and understands the <u>End-User License Agreement</u> attached hereto and accepts, and agrees to abide by, all of the terms of such End-User License Agreement." (<u>Id.</u> (emphasis added).)  Buzin states, however, that he was not presented with the End-User License Agreement.  (Buzin Cert. at 3.)  He also states he was not informed that any legal dispute would have to be litigated in Pennsylvania.  (<u>Id.</u>)  The Court also examined the Proposal.  It states that "all understandings between the parties regarding the purchase of the Products are fully set forth herein, <u>and</u> in the attached <u>Maxwell Software Licensing and Maintenance Agreements</u>."  (Ex. Proposal (emphasis added).)  The End-User License Agreement also provides that "[t]he provisions and terms of the license apply to all [Maxwell] software products . . . <u>obtained by the Licensee now and as may be supplemented</u>." (emphasis added).

Diversified has failed to make the necessary "strong showing" of unreasonableness to overcome a valid forum selection clause.  Buzin's signature appears on the End-User Registration Form, <u>i.e.</u>, the first page of the End-User License Agreement.  When he signed that page, his signature indicated that he had read and understood the attached End-User License Agreement.  His statement now, that he cannot say with certainty that he was presented with the End-User License Agreement, is insufficient to show that the forum selection clause was unreasonable.  <u>See</u>

13

C.I.N. Constr., LLC v. Hunt Constr. Group, Inc., No. 08-5810,
2009 WL 2998965, at *6 (D.N.J. Sept. 18, 2009) (stating that
failure to read the terms of the contract before signing it does
not invalidate a forum selection clause); see Wilson of
Wallingford, Inc. v. Reliable Data Sys., Inc., No. 95-6686, 1995
WL 734232 (E.D. Pa. Dec. 5, 1995). In Wilson, the Court held
that the plaintiff's argument that its president did not read the
forum selection clause did not render the clause invalid. "[T]he
law does not require parties [to] actually read or bargain over
each term . . . the critical inquiry is whether the provision had
been reasonably communicated by the agreement, not whether the
party actually read it." Id. at *2. The failure to read a
provision does not render it unconscionable. Id. In Wilson, the
forum selection clause was on the back of the contract. Id. The
front side, however, clearly communicated that there were binding
terms on the back of the contract. Id. The Court found that the
plaintiff was bound to those terms despite the failure to read
them. Id.

    Buzin's argument that he was not informed about the forum
selection clause and did not agree to it is also insufficient to
demonstrate a strong showing of unreasonableness. See Jordan,
2009 WL 2473987. In Jordan, the Court held that the plaintiff's
contention that it did not knowingly or voluntarily consent to

the venue mandated by the forum selection clause was insufficient to preclude the clause's enforcement.  Id. at *5.

## B. Section 1404 Analysis

Even though the Court finds that the forum selection clause is valid, it must still undergo a Section 1404 analysis.  Lester, 2009 WL 3757155, at *4.  The Court finds that transfer to the Eastern District of Pennsylvania is appropriate in light of the substantial consideration given to the forum selection clause. The existence of a valid forum selection clause shifts the burden to the plaintiff to demonstrate why the clause should not be enforced.  Id. at *5.  Diversified has failed to satisfy this burden and the Court finds that the public and private factors also weigh in favor of transfer.

Maxwell addresses the public and private factors.  It alleges that transfer is appropriate because most of the events giving rise to the action occurred in Pennsylvania.  (Def. Br. at 11.)  It also contends that its witnesses, books, records, and other items relating to the action are located in Pennsylvania. (Reply Br. at 4.)  Maxwell further states that there is no indication that Diversified's witnesses would be unable to travel to Pennsylvania.  (Def. Br. at 11.)  Maxwell also states that Pennsylvania courts are more familiar with Pennsylvania law and Pennsylvania law governs this matter pursuant to the forum selection clause.  (Id.)  Maxwell further argues that the mere

15

fact that Diversified is located in New Jersey and was visited by a Maxwell sales representative in New Jersey cannot overcome the heavy burden required to disregard the forum selection clause. (Id.)  Maxwell contends that Diversified is unable to meet its burden under Section 1404 demonstrating that the Jumara factors weigh against a transfer to the contractually agreed upon forum of the Eastern District of Pennsylvania.  (Id. at 12.) Diversified makes no argument regarding a Section 1404 analysis.

### 1. Private Factors

The private factors relevant to this analysis are the forum preferences of the parties, the convenience of the parties, and the convenience of the witnesses.  Although the plaintiff here brought the action in New Jersey, deference is not given to the plaintiff's forum choice when the plaintiff already agreed to a different venue in a forum selection clause.  Jumara, 55 F.3d at 880.  Maxwell has argued that its witnesses, books, and records related to the case are located in Pennsylvania.  The location of books and records is a private interest that the Court evaluates. Jumara, 55 F.3d at 879.  Diversified has made no argument that it would be inconvenient for it or its witnesses to litigate in Pennsylvania and there is no indication that its witnesses would be unable to travel to the Eastern District of Pennsylvania.  As such, in light of the substantial consideration given to the

16

forum selection clause and the convenience to witnesses and the parties, the private factors mitigate in favor of transfer.

## 2.  Public Factors

In evaluating the public factors, the Court must look to practical considerations that would make the trial easy, expeditious or inexpensive and the familiarity of the judge with applicable state law.  The parties have agreed that Pennsylvania law will govern any dispute regarding their agreement.  As such, a judge sitting in the Eastern District of Pennsylvania will be more familiar with Pennsylvania law.  See Hoffer v. Infospace.com, Inc., 102 F.Supp.2d 556, 577 (D.N.J. 2000) (finding that likely applicability of Washington law favors transfer to Western District of Washington).  The Court also considers "practical considerations that would make the trial easy, expeditious or inexpensive."  Maxwell has argued that all of its witnesses, books, records and other documents necessary for litigation are located in Pennsylvania.  (Reply Br. at 4.) This factor weighs in favor of transfer.  See Wayne v. Fuji Photo Film USA, Inc., No. 07-5536, 2008 WL 3832406, at *3 (looking to location of witnesses and documents when evaluating the practical considerations that would make the trial easy, expeditious or inexpensive).

17

## V.    Motion to Dismiss Counts II and III

Maxwell also seeks to dismiss Counts II and III of the claim pursuant to 12(b)(6) on the merits. (Def. Br. at 1-2.) Maxwell contends that Count II of the Complaint which alleges negligence, should be dismissed under Pennsylvania's "gist of the action doctrine" because it essentially restates the breach of contract claim. (Def. Br. at 2.) Maxwell also argues that Count II of the Complaint should be dismissed as untimely because Pennsylvania law provides a two-year statute of limitations period for negligence claims. (Id. at 14.) It further contends that Count III should be dismissed because Diversified licensed the software for a business purpose and thus lacks standing to bring a claim under Pennsylvania's consumer protection law. (Id.) Because the Court has determined that transferring the case to the Eastern District of Pennsylvania is appropriate, it will not address the merits of the part of the motion seeking to dismiss Counts II and III, but will deny this part of the motion without prejudice. See Lester, 2009 WL 3757155, at *8 (denying without prejudice alternative motions when the Court granted motion to transfer).

### CONCLUSION

The Court, for the reasons stated supra, will grant the part of the motion seeking to transfer to the Eastern District of Pennsylvania, deny the part of the motion seeking, in the

alternative, to dismiss the Complaint under 12(b)(6) as to venue

as moot, and deny the part of the motion seeking to dismiss

Counts II and III on the merits without prejudice.

                                    s/Mary L. Cooper
                                **MARY L. COOPER**
                                United States District Judge


Dated:    March 22, 2010